IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHELTON SIMMONS, ID #1588486, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-999-G(BH) |
| | § | |
| OFFICER THIGPEN, et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Pursuant to Special Order 3-251, this case has been automatically referred for pretrial management. Before the Court is *Defendants' Motion for Reply Under Fed. R. Civ. P. 7 and Brief in Support*, filed July 7, 2011 (doc. 13). Based on the motion and applicable law, the motion is **DENIED**.

**I. BACKGROUND**

On March 16, 2007, Shelton Simmons (Plaintiff) filed this action against correctional officer Jonathan Thigpen, correctional officer Lamar Chisley, and Sergeant Jesus Lopez of the Dallas County Jail (collectively "Defendants"), alleging they violated his civil and constitutional rights under color of state law while he was a Dallas County Jail inmate. (doc. 2.) Construing his claim as a claim under 42 U.S.C. § 1983, the court ordered Plaintiff to complete a Magistrate Judge's Questionnaire (the MJQ), specifying, among other things, the facts supporting his claim against each defendant, and the federal law or constitutional provisions that each defendant allegedly violated. (doc. 5.) Plaintiff responded to the MJQ on May 8, 2011. (doc. 6.)

The crux of his complaint is that Defendants violated the rights guaranteed to him by the Eighth and Fourteenth Amendments of the United States Constitution when they used excessive force causing him to sustain a broken arm. (*See* docs. 2 & 6.) He alleges that on May 14, 2009, he refused to show his arm band to an unknown female officer, who then called officers Thigpen and Chisley,

members of a special response team (SRT), to his cell. (doc. 6, p. 3.) The officers allegedly ordered him to get up from his bed. (*Id.*) He immediately complied with the order. (*Id.*) The officers then allegedly ran into his cell, ordered him to place his arms behind his back, grabbed his arms, and "shoved them" over his head. (*Id.*) After he bent over to prevent his arms from breaking, the officers escorted him to the exit of the tank where his cell was located. (*Id.*)

Plaintiff claims that the officers then took him to a holdover cell, where they lay him on his stomach and maliciously twisted his right and left arms. (doc. 6, pp. 2-4.) Officer Thigpen allegedly twisted his right arm until it could not be twisted anymore, causing him excruciating pain. (*Id.*) Officer Chisley allegedly twisted his left arm until it could not be twisted any more and ordered him to cross his legs. (*Id.*) Plaintiff claims that he could not cross his legs because he was paralyzed by the excruciating pain. (*Id.*) Sergeant Lopez allegedly stepped in and screamed "They said cross your fucking legs." (doc. 6, p. 4.) With an open palm, sergeant Lopez then allegedly struck his left arm that was already being twisted, and broke it on impact. (*Id.*) He was taken to a nurse station and subsequently "rushed" to the Parkland Hospital emergency room for his broken arm. (*Id.*)

On July 7, 2011, Defendants filed their original answer asserting that Plaintiff's claim for damages under § 1983 against them in their individual capacities was barred by the doctrine of qualified immunity. (doc. 11.) That same day, they moved to require Plaintiff to filed a detailed reply under Fed. R. Civ. P. 7(a), tailored to their defense of qualified immunity. (doc. 13.) Plaintiff did not respond and the motion is now ripe for determination.

## II. ANALYSIS

A public official performing a discretionary function enjoys qualified immunity in a civil action, provided the conduct alleged did not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982). Qualified immunity is not merely a defense to liability but an immunity from suit. *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42 (1995). In addressing a claim of qualified immunity, a court must first determine whether the plaintiff has alleged a violation of a clearly established constitutional right, which is a purely legal question. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Kipps v. Caller*, 205 F.3d 203, 204 (5th Cir. 2000). Then, the court proceeds to determine whether the right allegedly violated was clearly established at the time, such that a reasonable official would have understood that the conduct engaged in violated that right. *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993).

Although a plaintiff need not anticipate a claim of qualified immunity in his original pleading, he may be required to "engage the affirmative defense of qualified immunity when invoked." *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc). This is done through a Rule 7(a) reply. *See* Fed. R. Civ. P. 7(a). A Rule 7(a) reply "must be tailored to the assertion of qualified immunity and fairly engage its allegations." *Schultea*, 47 F.3d at 1433. "Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist." *Id*.

Here, Plaintiff's responses to the MJQ are detailed enough to engage the defense of qualified immunity. He describes in sufficient detail the actions taken by each defendant that deprived him of a constitutionally or statutorily protected right, and has stated specifically how this conduct caused his alleged injuries. Plaintiff "has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of [Defendants'] conduct at the time of the alleged acts." *See Schultea*, 47 F.3d at 1434. A Rule 7(a) reply is therefore not required.

### III. CONCLUSION

Defendants' motion for a Rule 7(a) reply is **DENIED**.

**SO ORDERED** on this 21st day of November, 2011.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE