IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHELTON SIMMONS, ID #1588486, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:11-CV-999-G(BH) |
| | § | |
| OFFICER THIGPEN, et al., | § | |
| | § | |
| Defendants. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION

Pursuant to Special Order 3-251, this case has been automatically referred for pretrial management. Before the Court is *Defendants' Motion for Summary Judgment on the Issues of Exhaustion and Qualified Immunity*, filed December 20, 2011 (doc. 30). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

On May 12, 2011, Shelton Simmons (Plaintiff) filed this action pursuant to 42 U.S.C. § 1983 against Dallas County Jail detention service officers Jonathan Thigpen (Thigpen), Lamar Chisley (Chisley), and Sergeant Jesus Lopez (Lopez) for alleged excessive force that resulted in a fracture to his left arm. (doc. 2.) He sues the defendants in their individual capacities. (*Id.*)

Plaintiff was arrested on charges of aggravated assault with a deadly weapon and held at the Dallas County Jail from March 5, 2009 to August 25, 2009. (Appendix (App.) at 1, 9-10.) On May 14, 2009, Thigpen and Chisley reported to the tank where Plaintiff was housed in response to a report from another officer that Plaintiff was causing a disturbance. (*Id*. at 2, 14, 16B, 17, 20.) The defendants, who were members of the Special Response Team (SRT), removed Plaintiff from the tank in accordance with jail policy. (*Id*. at 2-3, 14, 85, 89.) They allegedly twisted Plaintiff's arms

while transporting him to a nearby holdover cell, causing him pain.  (doc. 6 at 2; App. at 3, 85, 89,

93.)  The defendants then placed Plaintiff face down on the floor of the holdover cell and ordered

him to cross his legs while continuing to twist his arms.  (doc. 6 at 2-4; App. at 3, 85, 89, 93.)  When

Plaintiff did not comply with the defendants' order,  Lopez allegedly struck his left arm (which was

being held by Chisley), causing a fracture.  (docs. 2 at 4; 6 at 3-4, 6; App. at 3, 41, 50, 53-54, 86,

90, 93.)

Plaintiff initially filed a step-1 grievance with the jail relating to the May 14, 2009 incident

on May 24, 2009, and he asserted the same claim in subsequent grievances and communications.

(App. at 6, 25-31, 34-42.)  On June 18, 2009, the Grievance Committee issued a decision denying

Plaintiff's grievances.  (*Id*. at 6, 43.)  Plaintiff did not proceed with a step-2 appeal from the denial

of his grievance to the Chief Deputy of the Inmate Housing Program in accordance with applicable

jail policy and procedure despite the fact that he remained in custody there until his transfer to TDCJ

on August 25, 2009.  (*Id*. at 6, 22-69.)[1]  He did, however, write letters to Sheriff Lupe Valdez and

District Attorney Craig Watkins subsequent to the denial of his grievance.  (App. At 49-54.)  Neither

letter mentions the June 18, 2009 denial of his grievance or requests an appeal of the Committee's

decision.

The defendants move for summary judgment on grounds that Plaintiff has failed to exhaust

his administrative remedies.  (doc. 30.)  The motion has been fully briefed and is ripe for decision.

## II.  MOTION FOR SUMMARY JUDGMENT

The defendants initially move for summary judgment based on Plaintiff's alleged failure to

---

[1]  Plaintiff was convicted of the charge against him and is currently incarcerated at the Texas Department of Criminal Justice (TDCJ) - Correctional Institutions Division, in Amarillo, Texas.

exhaust his administrative remedies.  (doc. 30 at 3.)

A.    **Legal Standard**

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists.  Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324.  To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden,

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial.  *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff.  *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam);  *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218  (N.D. Tex. 1990).  However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).  Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim."  *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

**B.    Failure to Exhaust Administrative Remedies**

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  To state a claim under § 1983, Plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th

Cir. 1999).  Section 1983 reaches only those injuries caused by persons acting under color of state law.  *Dahl v. Akin*, 630 F.2d 277, 281 (5th Cir. 1980).

In addition to satisfying the substantive elements of a § 1983 claim, a *pro se* prisoner must also exhaust his administrative remedies before bringing a claim pertaining to prison conditions. "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1996 ("PLRA").  This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Exhaustion under the PLRA is mandatory, and the requirement is strictly construed.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  "Mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; . . . prisoners [must] exhaust available remedies properly."  *See Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).  Exhaustion is a prerequisite to suit even when the prisoner seeks relief not available in grievance proceedings such as money damages.  *See Booth v. Churner*, 532 U.S. 731, 740-41 (2001).

Failure to exhaust administrative remedies under the PLRA is an affirmative defense.  *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Carbe v. Lappin*, 492 F.3d 325, 327 (5th Cir. 2007).  Defendants therefore have the burden on summary judgment to establish that Plaintiff did not make use of the available administrative remedies at DCJ.  *See Crescent Towing & Salvage Co., Inc. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994) (affirmative defense requires the movant on summary judgment to establish each element of defense as a matter of law) (citing *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-23 (1986)); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (where the movant bears the burden of proof on an issue, he must establish all of the essential elements of a claim to warrant judgment in his favor).

The parties do not dispute the administrative procedures that an inmate in the jail must follow in order to exhaust his remedies in accordance with § 1997e(a): "An inmate at the Jail must follow a two-step administrative procedure in order to exhaust his administrative remedies in accordance with the PLRA. This process includes submitting a grievance and then filing a written appeal if necessary." (docs. 30 at 8-9; 31 at 11; App. at 5-6, 77, 79.) *See Burnett v. Robertson*, No. 3:01-CV-1284-P, 2001 WL 1577495, *2 (N.D. Tex. Dec. 7, 2001). When the prison provides a two-step procedure, an inmate must pursue his grievance at both steps in order to exhaust his administrative remedies. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004) (addressing two-step procedure in the Texas prison system rather than at a county jail).

The defendants provide evidence showing that Plaintiff received a copy of the jail Inmate Handbook when he was booked in on March 5, 2009, and that it explains the grievance procedure. (App. at 5-6, 77, 82.) Their evidence reflects that Plaintiff filed a step-1 grievance against all three of them. (App. at 6, 25-31, 34-42.) As reflected by the administrative record of Plaintiff's grievance file, he did not file a step-2 appeal from the June 18, 2009 denial of his grievance. (*Id.* at 22-69.) The defendants have therefore carried their summary judgment burden to show that Plaintiff did not exhaust his administrative remedies.

Plaintiff now has the burden of coming forward with evidence sufficient to establish that there is a genuine issue of material fact for trial. In response, Plaintiff avers that he wrote to the Chief Deputy of Inmate Housing subsequent to the events of May 14, 2009, but that he never

received a response.[2]   (doc. 36 at 1-3.)   He does not, however, detail the dates of any such correspondence or even aver that he wrote to the Chief Deputy *after* the denial of his step-1 grievance.[3]  (*Id.*)

Moreover, the written record contradicts Plaintiff's conclusory assertion that he attempted to appeal the denial of his grievance.  The letter he contends that was directed to the Chief Deputy of Inmate Housing is merely directed "To Whom It May Concern".  (doc. 36 at 7.)   More

---

[2]  Plaintiff's responses to the motion for summary judgment, which are verified under penalty of perjury, constitute competent summary judgment evidence "to the extent that [they] comport with the requirements of Fed. R. Civ. P. 56(e)."  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Barnes v. Johnson*, 204 F. App'x 377, 378 (5th Cir. 2006) (per curiam).  *See also Washington v. Moore*, 990 F.2d 626 (5th Cir. 1993).

[3]  Representative statements from Plaintiff's response include the following:

1. "I, Plaintiff Sheldon Simmons DID exhaust all of my administrative remedies prior to filing a 1983.  I DID write to the chief Deputy subsequent to filing several grievances on this matter. " (doc. 36 at 1.)
2. "The defendants claim that I failed Exhaust my administrative remedies, however they're [sic] claims are without merit for I wrote to the Chief Deputy subsequent to my filing my initial Grievance on 5-15-09."
3. "I wrote to the Chief Deputy (office of inmate housing) but he/she failed to answer/respond to my letters.
4. "There is no specific form that the inmates housed in the Dallas County Jail are obligated to use to appeal to the Chief Deputy thus I wrote to him/her on a regular piece of paper."
5. "This Chief Deputy failed/refused to answer my letters."

(doc. 36 at 1, 2, 3.)

Statements from Plaintiff's supplemental response include the following:

1. "The summary judgment record shows that I the Plaintiff made a diligent effort to satisfy the requirment [sic] of exhausting administrative remidies [sic] prior to filing a 1983."
2. "The plaintiff DID in Fact write a letter to the chief Deputy, office of Inmate Housing however, I never recieved [sic] a response from him or her."
3. "The chief Deputy, office of Inmate housing, nevever [sic] answered my letters."
4. "Contrary to the defendants allegations that I never or failed to file an appeal to the "several" grievances that I wrote, I wrote to the chief deputy of Inmate Housing on more then [sic] one occasion however, this chief Deputy never wrote me back."

(doc. 38 at 2, 3.)

importantly, it is dated June 12, 2009–six days *prior* to the denial of Plaintiff's step-1 grievance.[4] (*Id*.)  It therefore cannot be fairly construed as a proper step-2 appeal.  Plaintiff stated in his supplemental response that he was attaching a "correct" letter written to the Chief Deputy of Inmate Housing, but he did not.  (doc. 38 at 2.)

Plaintiff's verified responses to the defendants' motion for summary judgment include only vague conclusory statements that he wrote to the Chief Deputy of Inmate Housing.  None of the specific statements or his evidence create a genuine issue of material fact as to whether Plaintiff wrote to the Chief Deputy at any time *after* the Grievance Committee denied his grievance and are therefore insufficient to contradict the defendants' evidence on this crucial point.  Even viewing the facts in favor of Plaintiff and giving him the benefit of all reasonable inferences, as the Court must do in deciding a motion for summary judgment, no reasonable jury could find in his favor on the issue of exhaustion.  *See Kidd v. Livingston*, 463 Fed. App'x, 311, 313 (5th Cir. 2012), *petition for cert. filed*, (U.S. Apr. 24, 2012) (No. 11-9940) (claimant's "conclusory assertions and production of an unprocessed Step-2 form in the district court failed to create a genuine dispute as to his exhaustion of this grievance"); *Gonzales v. Smith*, 304 Fed. App'x 298, 299 (5th Cir. 2008) (rejecting claimant's argument that he was prevented from timely filing a grievance because his assertions were conclusory and unsupported by any citations to evidence in the record); *Daniels v. Dallas Ctny.*, No. 3:05-CV-1739-M, 2007 WL 2791491, at *3 (N.D. Tex. Sept. 26, 2007) (holding that claimant failed to "show a genuine issue for trial by merely stating he filed grievances").  His claims should therefore be dismissed for failure to exhaust his administrative remedies.

---

[4]  Plaintiff's supplemental response to the motion for summary judgment stated: "The letter I wrote on June 12, 2009 was a letter I wrote to the Chief Deputy of Inmate housing that I wrote to appeal another grievance."  (doc. 38 at 3.)  However, that letter clearly relates to the events of May 14, 2009.

When a prisoner fails to exhaust his administrative remedies prior to filing suit, without a valid excuse, the court may dismiss the action without prejudice to its refiling after the prisoner exhausts his administrative remedies.  *See Wendell v. Asher*, 162 F.3d 887, 890-92 (5th Cir. 1998);[5] *Gordon v. Pettiford*, 271 Fed. App'x 464, 464 (5th Cir. 2008) (per curiam).  The Court does not "inquire whether administrative procedures satisfy minimum acceptable standards of fairness and effectiveness"; prisoners simply "must exhaust such administrative remedies as are available, whatever they may be." *Alexander v. Tippah Cnty.*, 351 F.3d 626, 630 (5th Cir. 2003) (citations and internal quotation marks omitted).  Furthermore, substantial compliance with administrative procedures is insufficient to permit pursuit of a federal lawsuit.  *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).  Unless the prisoner pursues his "grievance remedy to conclusion", he has not exhausted available remedies." *Id.*

Because Plaintiff has not met his summary judgment burden, the Court should grant the defendants' motion to dismiss his claims against them for failure to exhaust his administrative remedies.[6]

### III.  CONCLUSION

The defendants' summary judgment motion should be **GRANTED,** and Plaintiff's claims should be dismissed without prejudice for failure to exhaust administrative remedies.

---

[5]  *Wendell* was partially overruled by implication by *Jones v. Bock*, 549 U.S. 199 (2007).  *See Richbourg v. Horton*, No. 08-10443, 2008 WL 5068680, at *1 (5th Cir. Dec. 2, 2008) (per curiam).  It is cited only for a proposition that remains good law after *Jones*.

[6]  Because the failure to exhaust administrative remedies is dispositive, the Court does not reach the defendants' alternate argument that they are entitled to qualified immunity.

9

**SO RECOMMENDED** on this 18th day of June, 2012.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE